**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TIMOTHY P. BRODEN**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN WILLIAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1209-CR-761 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1108-MR-3

**May 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Kevin Williams appeals his conviction for felony murder. He contends that there is insufficient evidence to sustain his conviction as an accomplice in the crime. Finding that there is sufficient evidence to sustain his conviction, we affirm.

## Facts and Procedural History

The facts most favorable to the verdict follow. On July 28, 2011, Michael Foster and Dartanyan Porche spent the afternoon together and talked about robbing someone to get some money. Foster and Porche eventually met up with Foster's fifteen-year-old cousin, N.P., and went to Williams' apartment. Williams and Foster were best friends and would see each other every day. Foster and Porche continued their conversation about wanting to rob someone at Williams' apartment while they waited for Williams to iron his clothes and get dressed.

The four men spent the evening driving around in Williams' car, visiting with two women named Joan and Ashley, and going to another friend, Danielle Tutt's, apartment. At some point during the day, Porche received a phone call from Clarence Smith ("Bay Bay") who wanted to buy guns. Foster told Porche to tell Bay Bay that they had guns to sell. Porche arranged for Bay Bay to buy two guns from him for $500; at the time Foster had only one 9 mm handgun in his possession. They agreed to meet at the apartments at 1840 Summertime Trail in Lafayette, across from where Tutt lived. The plan was then to lure Bay Bay into the hallway where Foster was hiding and then Foster would come out with his gun and rob Bay Bay of the $500. According to Foster's testimony, this plan was made when he and Porche were alone in a bedroom in Tutt's apartment and finalized

as they walked by themselves to go meet Bay Bay. Tr. p. 81. However, according to Williams' testimony, this plan was made when the group was driving around in his car. State's Ex. 43a p. 15.

Around 9:00 p.m., the group left to meet Bay Bay at the Summertime Trail apartments. Foster and Porche walked to the meeting place while Williams and N.P. moved Williams' car to the adjacent parking lot, backing the car into a parking spot. While waiting for the robbery, phone records indicate that Williams talked to Bay Bay on the phone and "asked him where they wanted um, to meet him at and stuff like that." *Id.* at 17; State's Ex. 44. Williams initially claimed that he stayed in the car during the robbery, but he later admitted that he entered the apartment where the robbery occurred and was returning to his car when Bay Bay showed up. State's Ex. 43a p. 18, 21-23. While waiting for Bay Bay, Foster told Williams or N.P. to go start the car, because the plan was to leave in Williams' car after the robbery. Tr. p. 84.

Bay Bay arrived at the apartments with two friends, Bianca Sharp and Jessica Dayhuff. Bay Bay got out of Dayhuff's car and said that he would be right back. During the robbery, Bay Bay "ended up not cooperating" so Foster shot him in the back left side. *Id.* Police were dispatched to the shooting at 9:16 p.m. *Id.* at 185. Bay Bay died due to a cardiac arrhythmia caused by blood loss from the bullet wound.

Williams was returning to his car at the time of the shooting. As he was approaching his car, he saw Dayhuff's car and worried that Sharp and Dayhuff would see him. State's Ex. 43a p. 23. At that point, Williams heard a gunshot, got into his car, and drove away with N.P. Williams then picked up Foster and Porche on a nearby street.

3

They drove away from the scene and later became aware that they were being followed by a police car. Williams pulled the car into a driveway and the police car pulled in behind them. When the police officer made no immediate effort to apprehend them, Williams, Foster, and N.P. fled. The three were arrested nearby with the help of a K9 unit. Porche was also arrested in the same area. Foster and Porche had no money with them at the time of arrest, but Williams had $105. Police later found $472 in a tree where Williams had parked his car.

The State charged Williams with felony murder, Class A felony robbery, Class C felony conspiracy to commit robbery, Class D felony theft, and Class B felony possession of a firearm as a serious violent felon. Foster pled guilty to murder and testified at Williams' jury trial. Foster testified that Williams, his best friend, was not involved in the plan to rob Bay Bay. However, the jury found Williams guilty on all counts. The trial court entered judgment on the felony-murder conviction only and sentenced Williams to fifty years in the DOC, with five years suspended to probation.

Williams now appeals.

## Discussion and Decision

Williams contends that there is insufficient evidence to sustain his felony-murder conviction. We disagree.

Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. We consider only the evidence most favorable

4

to the judgment and the reasonable inferences draw therefrom and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

Indiana Code section 35-42-1-1 governs felony murder and provides in relevant part:

> A person who:
> * * * * *
> (2) knowingly or intentionally kills another human being while committing or attempting to commit . . . robbery . . .;
> * * * * *
> commits murder, a felony.

The intent required for felony murder is not for murder, but only that required for the underlying crime, in this case robbery. *Pittman v. State*, 885 N.E.2d 1246, 1258 (Ind. 2008). Robbery is governed by Indiana Code section 35-42-5-1, which provides in relevant part:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
> (1) by using or threatening the use of force on any person; . . .
> commits robbery, a Class C felony. However, the offense is . . . a Class A felony if it results in serious bodily injury to any person other than a defendant."

Our Supreme Court has held that felony murder can be based on accomplice liability. *Wieland v. State*, 736 N.E.2d 1198, 1202-03 (Ind. 2000); *Williams v. State*, 706 N.E.2d 149, 157 (Ind. 1999) ("All participants in a robbery or attempted robbery which results in killing by one robber are deemed equally guilty of murder, regardless of which participant actually killed the victim."). Indiana's accomplice liability statute states that a

5

person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." Ind. Code § 35-41-2-4. Factors that are to be considered to determine whether a defendant acted as an accomplice include: "(1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime." *Wieland*, 736 N.E.2d at 1202.

The evidence presented at trial was sufficient to show that Williams was an accomplice to the robbery and resulting murder of Bay Bay. Williams spent the afternoon and the evening of the day of the robbery driving around with Foster and Porche, and Williams' own statement was that he was present when the plan to rob Bay Bay was devised.[1] State's Ex. 43a p. 15. Williams also moved his car to the parking lot adjacent to the Summertime Trail apartments and backed into a parking space, *id.* at 15-17, and the plan called for him to be the getaway driver, which is sufficient to support a robbery conviction. *Harvey v. State*, 546 N.E.2d 844, 845 (Ind. 1989). After the robbery Williams fled from the scene, providing circumstantial evidence of his guilt. State's Ex. 43a p. 18; *Gee v. State*, 526 N.E.2d 1152, 1158 (Ind. 1988). Williams picked up Foster and Porche on a nearby street, and he later fled again, this time on foot, when the police pulled his car over in a driveway. State's Ex. 43a p. 18, 49-50.

---

[1] The jury was properly instructed that

[m]ere presence of a person where a crime is being committed, even coupled with knowledge by the person that a crime is being committed, or the mere acquiescence by a person in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding, inducing, or causing a crime.

Appellant's App. p. 51.

6

Finally, Williams was in possession of $105, while Foster and Porche were not found to have any money in their possession after the robbery. Tr. p. 454-55. Only $472 was found in the yard next to Williams' car, and the agreed upon price for the guns was $500, so it was reasonable for the jury to conclude that Williams' money included some of the money from the robbery.

All of this evidence, taken together, is sufficient to sustain Williams' felony-murder conviction. It was reasonable for the jury to conclude that Williams knowingly or intentionally aided Foster and Porche in taking Bay Bay's money that night, thereby making him an accomplice to the robbery. Because the robbery resulted in Bay Bay's murder and a felony-murder conviction can be based on accomplice liability, it was not unreasonable for the jury to conclude that Williams was guilty of felony murder. Williams' argument therefore is merely an attempt for us to reweigh the evidence, which we will not do. We affirm his conviction.

Affirmed.

KIRSCH, J., and PYLE, J., concur.